IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| M. RANDY RICE, TRUSTEE FOR | * | |
| JODY L. CLARK, | * | |
| | * | |
| Plaintiff, | * | |
| vs. | * | No. 4:12-cv-00108-SWW |
| | * | |
| | * | |
| UNION PACIFIC RAILROAD COMPANY, | * | |
| | * | |
| Defendant/Third-Party | * | |
| Plaintiff, | * | |
| vs. | * | |
| | * | |
| | * | |
| | * | |
| GUNDERSON RAIL SERVICES, LLC, | * | |
| D/B/A GREENBRIER RAIL SERVICES | * | |
| PINE BLUFF D/B/A GUNDERSON | * | |
| WHEEL SERVICES AND D/B/A | * | |
| GUNDERSON, INC. | * | |
| | * | |
| Third-Party Defendant. | * | |

<u>OPINION AND ORDER</u>

Plaintiff M. Randy Rice, Trustee for Jody L. Clark, brings this action under the Federal

Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq*., the Federal Railroad Safety Act

(FRSA), 49 U.S.C. § 20101 *et seq*., and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §

20301 *et seq.*, for personal injuries Clark states he sustained while working as a switchman for

defendant Union Pacific Railroad Company (Union Pacific).[1]  Union Pacific, in turn, has filed a

third-party complaint for indemnity against Gunderson Rail Services, LLC, d/b/a Greenbrier Rail

Services Pine Bluff d/b/a Gunderson Wheel Services and d/b/a Gunderson, Inc. (Gunderson),

---

[1] After this action was filed, Clark filed for bankruptcy and moved to to substitute M. Randy
Rice, Trustee, as a plaintiff in this matter.  The Court granted Clark's motion but did not allow Clark to
remain as a plaintiff as he does not have standing to pursue this claim.

alleging that the loss claimed by Clark is the result of failure and negligence of Gunderson and that Gunderson is liable for the loss under indemnity provisions in a June 2000 Track Lease Agreement pursuant to which Gunderson leases track from Union Pacific.  A jury trial is scheduled for May 29, 2012.

The following motions are before the Court: (1) Union Pacific's motion for summary judgment on Count II of plaintiff's complaint under the FSAA [doc.#51]; (2) Union Pacific's motion for summary judgment on its claim for indemnity against Gunderson under the Track Lease Agreement [doc.#54]; (3) Union Pacific's *Daubert* motion to exclude certain deposition testimony of Dr. Steven Cathey [doc.#57]; (4) Gunderson's motion to exclude expert testimony of James V. Smith [doc.#59]; (5) Union Pacific's *Daubert* motion to exclude the testimony of Terry Cordray [doc.#60]; (6) Union Pacific's *Daubert* motion to exclude the testimony of Ralph Scott [doc.#62]; (7) Union Pacific's *Daubert* motion to exclude certain testimony of Les Lawson [doc.#64]; (8) Gunderson's motion to exclude expert testimony of David Joe Lydick [doc.#67]; and (9) plaintiff's motion for partial summary judgment concerning Union Pacific's negligence under Count I of the complaint [doc.#68].  Responses to these motions were filed on May 9, 2012.[2]

---

[2] These motions were originally due on January 30, 2012.  The parties mutually agreed to extend discovery past the Court-imposed discovery deadline and consequently requested the Court to extend the motions deadline to April 13, 2012.  The Court granted the parties' request.  During a later telephone conference to address a motion to quash that was held on April 2, 2012, the Court, in consultation with the parties, extended the motions deadline an additional week, to April 20, 2012.  The motions now before the Court were all filed on April 20, 2012.  Upon request of all parties, the Court extended the time to respond to these motions to May 9, 2012, so that the parties could engage in mediation.  Mediation, however, proved unsuccessful.  Because the trial date of May 29, 2012, is fast approaching, and given other matters on the Court's docket (including service on the Foreign Intelligence Surveillance Act Court in Washington, D.C. the week of May 21, 2012), today's Opinion and Order is by necessity somewhat brief and primarily intended simply to apprise the parties' of the Court's rulings on their motions so that they may prepare for trial accordingly.

I.

At the time of his accident, Clark was a switchman working for Union Pacific.  Clark was part of a three man crew (which included a foreman and an engineer) whose job it was to pick up loaded railroad cars from the Gunderson facility in Pine Bluff, Arkansas.  Union Pacific owned the tracks at the Gunderson facility and allowed Gunderson to use the tracks under a June 2000 Track Lease Agreement.

On August 30, 2010, Clark and the other members of his crew were picking up three wheel cars from the Gunderson facility to bring back to the Union Pacific facility.  When Clark asked the engineer to "stretch," or move the train forward, Clark realized that the last car on the track was not coupled to the others.  Clark walked to the rear of Track 570 and he noticed that the draw bar on the last car, AOK6445, was slewed, or moved over to one side.  Standing water and mud existed around the track and in-between Track 570.  Clark slipped in the mud while attempting to manually align the draw bar and seriously injured his back, requiring surgery.  This action followed.

II.

The Court first addresses the parties' motions for summary judgment.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has

properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party must respond by submitting evidentiary materials that set out "'specific facts showing ... a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

1.

Addressing first Union Pacific's motion for summary judgment on Count II of plaintiff's complaint under the FSAA [doc.#51], the Court denies this motion as moot as plaintiff, in his response to Union Pacific's motion, essentially concedes the merits of Union Pacific's motion and states that he withdraws Count II of his complaint.

2.

The Court now turns to Union Pacific's motion for summary judgment on its claim for indemnity against Gunderson under the Track Lease Agreement [doc.#54]. Union Pacific's right to recover indemnity from Gunderson under the Track Lease Agreement is a contractual duty and not a duty arising under the common law of tort. *Burlington Northern R. Co. v. Farmers Union Oil Co.*, 114 F.3d 705, 707 (8th Cir. 1997). Gunderson's indemnity obligation is, therefore, governed by Arkansas contract law. *Id.* Under Arkansas law, Union Pacific has no claim for indemnification unless and until it has actually paid a loss in plaintiff's lawsuit against it. See *Ray & Sons Masonry Contractors, Inc. v. United States Fidelity & Guar. Co.*, 353 Ark. 201, 216, 114 S.W.3d 189, 198 (2003) ("An indemnitor's obligation to reimburse against loss does not become due until after the indemnitee has paid damages to a third party."); *Jones v. Sun Carriers, Inc.*, 856 F.2d 1091, 1094 (8th Cir. 1988) (under Arkansas law, "an indemnitor's obligation for 'damages,' 'losses,' 'costs and expenses,' does not accrue until the indemnitee has actually made a payment or has otherwise actually expended sums.").

After a settlement or judgment, the existence and extent of any indemnity obligation requires factual findings as to the nature and extent of the acts or omissions of Union Pacific and Gunderson. Cf. *Carlson v. Consol. Rail Corp.*, 105 F.Supp.2d 901, 905-906 (N.D. Ill. 2000) (denying Railroad's motion for summary judgment and holding that application of the indemnity agreement at issue could not be determined until "a trier of fact has sorted out causation and fault"); *Burlington Northern R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 533 (8th Cir. 2000) (interpreting similar indemnity clause to mean that, even if indemnity clause has been triggered, a railroad may only recover one-half of its liability if the lessee can prove that the

railroad was negligent and its negligence contributed to the injury).[3]  The Court determines that there remain genuine issues of material fact regarding the parties' respective liabilities, if any, and that these issues must be sorted out by the finder of fact before a definitive indemnity ruling may issue.[4]

3.

Finally, the Court turns to plaintiff's motion for partial summary judgment concerning Union Pacific's negligence under Count I of the complaint [doc.#68].  Plaintiff argues that Union Pacific's failure to remedy the muddy condition where the incident occurred was negligence and that Union Pacific's negligence was a cause, in whole or in part, of Clark's back injury.  Plaintiff also argues it is entitled to summary judgment on the issue that Union Pacific, as a matter of law, cannot delegate its duty under the FELA to provide its employees a reasonably safe place to work to Gunderson and is, in fact, responsible for Gunderson's negligence.  See, *e.g.*, *Lockard v. Missouri Pacific R. Co.*, 894 F.2d 299, 303 (8th Cir. 1990) (noting that FELA imposes a nondelegable duty upon the railroad to provide its employees with a safe place to work and this duty, which is broader than a general common law duty of care, extends to the property of third parties and includes an obligation to inspect the premises of the third party and to protect the railroad's employees from dangerous conditions).

---

[3] The primary purpose of an indemnity agreement such as is at issue here is to indemnify a railroad when its lessee's act or omission causes the railroad to violate its nondelegable duty to furnish a safe workplace under FELA. *Id.* at 532.  Accordingly, the inquiry into whether an act or omission has occurred does not focus primarily on the lessee's duties to the railroad, but rather on the railroad's duty to provide a safe workplace. *Id.*

[4] Gunderson's argument that Union Pacific is not entitled to *full* indemnity against Gunderson in the event there is a settlement or judgment appears, based on a preliminary review, to be not totally off base, although the merits of such argument will, of course, only be determined following a full review by the finder of fact.

To succeed on an FELA claim, a plaintiff is required to show that, while he was working for the railroad, he was injured "resulting in whole or in part from the negligence of any of the officers, agents, or employees of [the railroad], or by reason of any defect or insufficiency, due to its negligence," in its equipment. *Villa v. Burlington Northern and Santa Fe Railway Co.*, 397 F.3d 1041, 1044 (8th Cir. 2005) (quoting 45 U.S.C. § 51). A plaintiff must generally prove the traditional common law components of negligence, which include duty, breach, causation, and injury, to prevail on a FELA claim. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). Included in the plaintiff's prima facie case is the element of foreseeability. *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir. 1976). To recover, the plaintiff must prove that the railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. *Id.* "Negligence, for purposes of FELA, exists if defendants knew or should have known 'that prevalent standards of conduct were inadequate to protect petitioner and similarly situated employees.'" *Villa,* 397 F.3d at 1045 n. 4 (quoting *Urie v. Thompson,* 337 U.S. 163, 178 (1949)). Knowledge of inadequacy is a factual question for the jury. *Id.*

In response to plaintiff's motion for partial summary judgment, Union Pacific does not dispute plaintiff's claim that the facts establishing Union Pacific's negligence are undisputed, that a railroad has the nondelegable duty to provide its employees with a safe place to work, and that any negligence of Gunderson is imputed to Union Pacific.[5] Rather, Union Pacific only argues that the motion for partial summary judgment must be denied as it fails to take into

---

[5] "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees,* 558 F.3d 731, 735 (8th Cir. 2009)

account that Union Pacific is entitled to have the jury consider the contributory negligence of Clark.

Certainly, "in the trial of an FELA case, the jury may diminish an employee's recovery 'in proportion to the amount of negligence attributable to such employee.'" *Burlington Northern, Inc. v. Hughes Bros., Inc.*, 671 F.2d 279, 283 (8th Cir. 1982) (quoting 45 U.S.C. § 53). See also *Van Boening v. Chicago and North Western Transp. Co.*, 882 F.2d 1380, 1382 (8th Cir. 1989) (a jury finding of contributory negligence, which the defendant bears the burden of proving, proportionally reduces a plaintiff's recovery; the issue of contributory negligence is submissible to the jury only if a defendant offers some evidence independent of the plaintiff's testimony from which a jury could reasonably find a lack of due care by the plaintiff); *Birchem v. Burlington Northern R. Co.*, 812 F.2d 1047, 1049 (8th Cir. 1987) (in an FELA case, a defendant is entitled to a contributory negligence instruction if there is any evidence to support the theory, but if defendant fails to produce evidence of plaintiff's lack of due care, then it is reversible error to give instruction).[6] In this respect, in support of its entitlement to have the jury consider contributory negligence, Union Pacific argues that "there will be evidence that despite his training and despite alternative options, [Clark] stepped into what he could readily identify as a hazard."

Having considered the matter, and there being no objection, the Court grants plaintiff's motion for partial summary judgment to the extent that the facts establishing Union Pacific's negligence are undisputed, that a railroad has the nondelegable duty to provide its employees

---

[6] However, in circumstances where the railroad has violated "any statute enacted for the safety of employees" and that violation has "contributed to the injury or death of [the] employee," the employee will not "be held to have been guilty of contributory negligence...." 45 U.S.C. § 53.

with a safe place to work, and that any negligence of Gunderson is imputed to Union Pacific. However, the extent of Union Pacific's negligence and any contributory negligence on the part of Clark will remain for trial at this time. In that respect, Clark's motion for partial summary judgment is denied.[7]

### III.

The Court now turns to the parties' motions to exclude expert testimony. "'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,' an expert may testify in the form of an opinion or otherwise so long as '(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" *Vasquez v. Colores*, 648 F.3d 648, 653 (8th Cir. 2011) (quoting

---

[7] The Court notes that a contributory negligence defense is to be distinguished from an assumption of risk defense, which is disallowed under FELA:

> Although there is some overlap between assumption of risk and contributory negligence, generally the two defenses are not interchangeable. At common law an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk. *Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist.* Defenses once embraced substantially within the concept of assumption of risk are barred under the FELA and may not be revived in the form of contributory negligence. Where an act of alleged contributory negligence is but the practical counterpart of assumption of risk, it does not constitute a defense. By this reasoning, the employer's argument here must fail, for it is in essence an assumption of risk defense, not one based upon contributory negligence. The employee who enters the workplace for a routine assignment in compliance with the orders and directions of his employer or its supervising agents, who by such entry incurs risks not extraordinary in scope, is not contributorily negligent, but rather is engaging in an assumption of risk.

*Birchem*, 812 F.2d at 1049 (quoting with approval *Taylor v. Burlington N.R.R.,* 787 F.2d 1309, 1316 (9th Cir. 1986) (emphasis supplied)). Union Pacific's argument in support of its entitlement to have the jury consider contributory negligence that "there will be evidence that despite his training and despite alternative options, [Clark] stepped into what he could readily identify as a hazard" arguably constitutes an impermissible assumption of risk defense.

Fed.R.Evid. 702).  In determining whether expert testimony should be admitted, the district court must decide if the expert's methodology is reliable and can be reasonably applied to the facts of the case.  *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) (internal quotation marks and citation omitted).  See also *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (when considering expert testimony, a district court must ensure that all scientific testimony is both reliable and relevant).  Pursuant to *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the district court must conduct this initial inquiry as part of its gatekeeping function.  *Watson*, 668 F.3d at 1015.  *Daubert* is meant to protect juries from being swayed by dubious scientific testimony.  *Id.*  To satisfy the reliability requirement for admission of expert testimony, the party offering the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid.  *Barrett*, 606 F.3d at 980 (internal quotation marks and citation omitted).[8]  To satisfy the relevance requirement for the admission of expert testimony, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue.  *Id.*  Mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony.  *Watson*, 668 F.3d at 1015.  Rather, if a party thinks other

---

[8] The district court examines the following four non-exclusive factors when determining the reliability of an expert's opinion: (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "[the method's] 'general acceptance.'"  *Presley v. Lakewood Engineering and Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009) (quoting *Daubert*, 509 U.S. at 593-594).  These factors are not exhaustive or limiting, and a court must use the factors as it deems fit to tailor an examination of the reliability of expert testimony to the facts of each case.  *Id.* (citation omitted).  In addition, the district court can weigh whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.  *Id.*  (internal quotation marks and citation omitted).  While weighing these factors, the district court must continue to function as a gatekeeper who separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge.  *Id.*

assumptions and methods are more appropriate, it may make this apparent through cross-examination and by presenting its own expert witness. *Id.* See also *Weitz Co. v. MH Washington*, 631 F.3d 510, 527 (8th Cir. 2011) (the district court must exclude expert testimony if it is so fundamentally unreliable that it does not assist the jury; otherwise, the factual basis of the testimony goes to the weight of the evidence. *Id.*[9]

### 1.

The Court denies Union Pacific's *Daubert* motion to exclude certain deposition testimony of Dr. Steven Cathey [doc.#57]. Dr. Cathey, a practicing neurosurgeon in North Little Rock, Arkansas, was Clark's treating physician, including performing Clark's back surgery, and is not a retained expert. Union Pacific argues that Dr. Cathey's opinion is based on Clark's self-restriction and not scientifically-accepted principles, but the Court finds that Dr. Cathey's opinions are based upon his objective findings, including Clark's past medical treatment and conditions. Union Pacific's disagreement with Dr. Cathey's assumptions and methodology may be addressed in cross-examination.

### 2.

The Court denies Gunderson's motion to exclude expert testimony of James V. Smith [doc.#59]. Gunderson argues that Smith admitted in his deposition that he has had no experience with Occupational Safety & Health Administration (OSHA) standards or with the Arkansas Department of Labor Basic Safety Manual prior to this case and that such testimony should be stricken. In response, Union Pacific agrees that Smith, who Union Pacific states has spent 34

---

[9] When, as here, "a district court is satisfied with an expert's education, training, and experience, and the expert's testimony is reasonably based on that education, training, and experience, the court does not abuse its discretion by admitting the testimony without a preliminary hearing." *United States v. Kenyon,* 481 F.3d 1054, 1061 (8th Cir.2007).

years in the Railroad industry, including time as a track foreman, track inspector, track manager, and, currently, as Manager of Track Maintenance for Union Pacific, cannot opine as to the applicability of the OSHA General Duty Clause, or the standards of the Arkansas Department of Labor.  Union Pacific argues, however, that to the extent Smith is offering factual testimony, based on his experience and perception, such testimony will be helpful to the jury.  The Court agrees and will allow Smith's testimony.  Gunderson's disagreement with Smith's assumptions and methodology may be addressed in cross-examination.

3.

The Court denies Union Pacific's *Daubert* motion to exclude the testimony of Terry Cordray [doc.#60].  Union Pacific argues that Cordray, a vocational rehabilitation expert,  opines on Clark's ability to obtain future employment and that Cordray admits that his testimony concerning Clark's physical work restrictions and ability to return to work is based solely on Dr. Cathey.  Plaintiff, however, notes that Cordray has relied upon the objective medical findings of Dr. Cathey and argues that Dr. Cathey's opinions as to Clark's ability to obtain future employment is certainly relevant to the jury's determination of the proper measure of damages in this case.  The Court agrees and notes that it has already determined that Dr. Cathey's opinions are admissible.  Union Pacific's disagreement with Cordray's assumptions and methodology may be addressed in cross-examination.

4.

The Court denies  Union Pacific's *Daubert* motion to exclude the testimony of Ralph Scott [doc.#62].  Union Pacific argues that Scott, who plaintiff states is an economics expert with a doctorate from Tulane School of Economics, opines on Clark's future lost wages and benefits,

but that Scott admits his testimony concerning Clark's lost wages and benefits assumes that

Clark is totally disabled.  Union Pacific argues that beyond Clark's own self-reported limitations,

there are no objective, medical findings from Clark's doctors that would prevent plaintiff from

returning to work without restrictions.[10]  Again, the Court has already determined that Dr.

Cathey's opinions are admissible, and plaintiff notes that Union Pacific does not challenge

Scott's qualifications as an expert in economics to testify regarding the subject of lost future

earnings capacity and does not challenge the methodology used by Scott to evaluate Clark's lost

future earnings capacity.  Union Pacific's disagreement with Scott's assumptions and qualifications

may be addressed in cross-examination.

5.

The Court denies Union Pacific's *Daubert* motion to exclude certain testimony of Les

Lawson [doc.#64].  Union Pacific notes that Lawson is a retired Union Pacific Manager of

Mechanical Maintenance and that while he would be qualified to render some opinions of a

mechanical maintenance nature, he is not qualified to render opinions regarding interpretations

of the Federal Railroad Administration's (FRA) track safety standards and Gunderson's

responsibilities and compliance under these Standards and the jurisdiction and compliance of

OSHA.  Such opinions, argues Union Pacific, should be stricken.

In response, Gunderson argues that Lawson never professed to have the type of

background in FRA track safety standards or OSHA standards that would permit him to identify

specific regulations off the top of his head but that he does have significant experience

---

[10] In its motion to exclude certain deposition testimony of Dr. Cathey [doc.#57], Union Pacific states that it does not contest either the seriousness or the permanency of Clark's injury and that it concedes for the purpose of the motion that Clark's bowel and bladder problems may have to be accommodated in order for him to return to work.

representing Union Pacific and another railroad, Southern Pacific,[11] in their dealings with car repair shops and wheel repair facilities similar to Gunderson's Pine Bluff location.  Gunderson notes that during his employment with Southern Pacific, Lawson visited the Pine Bluff facility (then owned by Southern Pacific) four to six times a year and that he has sufficient familiarity with FRA standards to know that the agency does not require non-railroad industries to comply with its standards.  Gunderson additionally notes that experienced railroad supervisors are aware that OSHA generally does regulate safety standards for railroad workers and their employees.  The Court agrees that Lawson has "knowledge, skill, training, experience or education" to give testimony in his field.  Union Pacific's disagreement with Lawson's assumptions and methodology may be addressed in cross-examination.

6.

Finally, the Court denies Gunderson's motion to exclude expert testimony of David Joe Lydick [doc.#67].  Gunderson moves for an order prohibiting Lydick from testifying about the purported applicability of OSHA standards to Gunderson's operations at its Pine Bluff facility and from testifying about the purported applicability of any section of the Arkansas Code or the Department of Labor Basic Safety Manual. Gunderson states that Lydick admitted in his deposition that he has had no expertise with OSHA standards or with Arkansas law and that he considers these legal standards to be a matter of common sense, easily understood by the jury.

In response, Union Pacific notes that Lydick is a 40 year veteran of the railroad industry with almost 25 years of that time spent in service with the FRA and that Lydick was employed by that agency as a Track Safety Inspector, District Chief, Deputy Regional Administrator, and

---

[11] Southern Pacific merged with Union Pacific in 1996.  *Cooney v. Union Pacific R.R.*, 258 F.3d 731, 733 (8th Cir. 2001).

as a Safety Assurance and Compliance Program Manager/Railroad Safety Oversight Manager assigned to CSX Transportation.  Union Pacific notes that in the course of his professional duties Lydick has personally inspected thousands of miles of railroad track for compliance with FRA track safety standards, railroad engineering design, maintenance, and procedures standards, railroad operating rules, railroad industry standards, and American Railway Engineering & Maintenance of Way Association guidelines.  The Court finds that Lydick's explanation of industry practices and procedures to properly maintain the track environment would assist the jury in addressing the issues in this action.  Gunderson's disagreement with Lydick's assumptions and methodology may be addressed in cross-examination.

IV.

In sum, the Court denies as moot Union Pacific's motion for summary judgment on Count II of plaintiff's complaint under the FSAA [doc.#51], denies without prejudice Union Pacific's motion for summary judgment on its claim for indemnity against Gunderson [doc.#54], grants in part and denies in part plaintiff's motion for partial summary judgment concerning Union Pacific's negligence [doc.#68], denies Union Pacific's *Daubert* motion to exclude certain deposition testimony of Dr. Steven Cathey [doc.#57], denies Gunderson's motion to exclude expert testimony of James V. Smith [doc.#59], denies Union Pacific's *Daubert* motion to exclude the testimony of Terry Cordray [doc.#60], denies Union Pacific's *Daubert* motion to exclude the testimony of Ralph Scott [doc.#62], denies Union Pacific's *Daubert* motion to exclude certain testimony of Les Lawson [doc.#64], and denies Gunderson's motion to exclude expert testimony of David Joe Lydick [doc.#67].[12]

---

[12] The Court reserves the right to reconsider any aspect of today's Opinion and Order prior to and during trial as circumstances may warrant.

IT IS SO ORDERED this 15th day of May 2012.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE